UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID KLEIN,

Plaintiff,

v.

JELLY BELLY CANDY COMPANY,

Defendant.

No.  2:23-cv-00035-DAD-JDP

ORDER GRANTING DEFENDANT'S APPLICATIONS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS, IN PART

(Doc. Nos. 46, 47)

This matter came before the court on June 20, 2023 for a hearing on the applications for attorneys' fees and costs filed on behalf of defendant Jelly Belly Candy Company ("Jelly Belly") on March 14, 2023.  (Doc. Nos. 46, 47.)  Plaintiff David Klein appeared by video representing himself *pro se*, and attorney Eric D. Wong appeared by video on behalf of defendant.  For the reasons explained below, defendants' applications will be granted, in part.

## BACKGROUND

**A.     Plaintiff's Prior Lawsuit — the New York Action**

On May 23, 2022, plaintiff Klein, proceeding with counsel,[1] initiated a civil action against Jelly Belly in New York state court asserting claims for libel (written defamation) and civil conspiracy (the "New York Action").  (*See* Doc. No. 33-1 at 3.)  Jelly Belly removed that action

---

[1]  Plaintiff Klein was represented by counsel throughout the New York Action.

1   to federal court in New York and thereafter moved to dismiss Klein's claims as barred by the

2   applicable one-year statute of limitations and because Klein had otherwise failed to state a

3   cognizable claim for relief.  *See Klein v. Jelly Belly Candy Company*, 1:22-cv-05629-JPC-JLC

4   (S.D.N.Y July 1, 2022); (Doc. No. 33-5).

5          Rather than oppose Jelly Belly's motion to dismiss, Klein filed a "pre-motion letter"

6   seeking the court's permission to file a motion to transfer the action to the federal court in

7   Massachusetts, transparently conceding that the reason for the transfer was to attempt to take

8   advantage of the longer (3-year) statute of limitations in Massachusetts.  (*See* Doc. No. 33-5.)  In

9   that letter, Klein alternatively requested that the court dismiss his action so that he could re-file

10  the action "in a jurisdiction with a longer statute of limitations." (*Id.* at 4.)  Jelly Belly filed a 3-

11  page, single spaced letter in response, presenting its arguments and citing legal authority to urge

12  the New York district court to deny Klein's request for permission to file a motion to transfer the

13  action.  *See Klein*, 1:22-cv-05629-JPC-JLC, Letter, Doc. No. 20 (Aug. 15, 2022).  Klein then filed

14  a pre-motion letter requesting permission from the court to file a motion to strike Jelly Belly's

15  letter as non-compliant with the court's page limits and format requirements.  *See Klein*, 1:22-cv-

16  05629-JPC-JLC, Letter, Doc. No. 22 (Aug. 15, 2022).  Jelly Belly responded and cited legal

17  authority to support its position that Klein's request to file a motion to strike should be rejected.

18  (Doc. No. 23.)  The New York district court denied Klein's request, stating that "[t]he double-

19  spacing requirement in Local Rule 11(b)(3) does not apply to pre-motion letters written to the

20  Court."  *See Klein*, 1:22-cv-05629-JPC-JLC, Order, Doc. No. 25 (Aug. 18, 2022).

21         That court also directed Jelly Belly "to file an additional response letter by August 22,

22  2022, addressing whether voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i) is available to

23  Plaintiff in this case."  *See Klein*, 1:22-cv-05629-JPC-JLC, Order, Doc. No. 24 (Aug. 18, 2022).

24  In its additional response, Jelly Belly suggested that, rather than being ignorant of the option to

25  voluntarily dismiss the action without a court order, Klein's counsel had strategically decided not

26  to pursue voluntary dismissal under Rule 41(a)(1)(A)(i) because doing so would enable Jelly

27  Belly to seek an award of costs and attorneys' fees pursuant to Rule 41(d) of the Federal Rules of

28  Civil Procedure.  (*See* Doc. No. 33-17 at 2.)  Specifically, Rule 41(d) provides that:  "If a plaintiff

1   who previously dismissed an action in any court files an action based on or including the same

2   claim against the same defendant, the court:  (1) may order the plaintiff to pay all or part of the

3   costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."

4   Fed. R. Civ. P. 41(d).  Citing this rule, Jelly Belly warned Klein that should he "pursue his

5   intended forum shopping strategy to avoid New York's statute of limitations by voluntarily

6   dismissing this action [] and refiling it elsewhere, [Jelly Belly] reserves the right to recover the

7   fees and costs it incurred in defending this action in New York." (*See* Doc. No. 33-17 at 2.)

8   Thereafter, the New York district court issued an order advising Klein that if he "wishes to

9   terminate this action, and presumably re-file his complaint in a different district, he shall file a

10   notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)." *See*

11   *Klein*, 1:22-cv-05629-JPC-JLC, Order, Doc. No. 27 (Aug. 22, 2022).  On August 26, 2022, Klein

12   filed a notice of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i), and that action was

13   dismissed accordingly. (*See* Doc. No. 33-7 at 2.)

14   **B.      Plaintiff's Second Lawsuit — this Action**

15   On September 28, 2022, plaintiff Klein, proceeding with counsel, filed the complaint

16   initiating *this action* against Jelly Belly, again asserting defamation and civil conspiracy claims,

17   this time in Massachusetts state court. (Doc. No. 1-2 at 4.)  Defendant timely removed this action

18   to federal court in Massachusetts on October 25, 2023, and on January 6, 2023, the District Court

19   of Massachusetts transferred this action here to the Eastern District of California.[2] (Doc. Nos. 1

20   at 1; 22; 25.)

21   On January 20, 2023, defendant Jelly Belly filed two motions in this action: (1) an anti-

22   SLAPP motion to strike/dismiss plaintiff's claims and a request for an award of attorneys' fees

23   and costs it incurred in defending this action; and (2) a motion under Rule 41(d) for an award of

24   attorneys' fees and costs incurred in the New York Action. (Doc. Nos. 32, 33, 36).  On March 7,

25   2023, the court held a hearing on those motions and orally granted both of them from the bench.

26   (Doc. Nos. 43, 50.)  Specifically, the court found that pursuant to California Civil Procedure Code

27   _____

28   [2]  Plaintiff Klein was represented by counsel in this action through January 3, 2023, and since that date, has proceeded *pro se*. (*See* Doc. No. 22.)

1   § 425.16(c), defendant Jelly Belly is entitled to recover reasonable attorneys' fees and costs

2   incurred moving to strike plaintiff's claims in this action.  (*Id.*)  The court also found that

3   pursuant to Rule 41(d), awarding Jelly Belly the attorneys' fees and costs it incurred in the New

4   York Action is appropriate in light of plaintiff's admitted forum shopping.  (*Id.*) (citing

5   *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 545–46, n.8 (9th Cir. 2022); *Milkcrate*

6   *Athletics, Inc. v. Adidas Am., Inc.*, No. 21-cv-09328-FWS-JPR, 2022 WL 3584501, at *13 (C.D.

7   Cal. Aug. 4, 2022) (applying the decision in *Moskowitz* and viewing the "weight of authority as

8   constraining the upper bound of the court's discretion to award fees to situations in which (1)

9   there is proof of bad faith, vexatiousness, wanton actions, or forum shopping in the filing of the

10  original action; or (2) if the substantive statute underlying the claim provides for attorney's fees").

11  Because defendant had not specified the amount of attorneys' fees and costs it was requesting and

12  had not otherwise provided any information in those motions as to the amounts of attorneys' fees

13  and costs it had allegedly incurred in defending the two actions, the court directed defendant to

14  file two separate applications for attorneys' fees and costs, each accompanied by a declaration

15  from counsel and supporting documentation, to enable the court to conduct a lodestar analysis and

16  evaluate the reasonableness of the amounts that defendant requests be awarded.  (*Id.*)  In short,

17  the court has already determined that it will award Jelly Belly the attorneys' fees and costs it

18  incurred in these two separate actions; the only remaining question is what amount is reasonable

19  for each award.

20        As directed, on March 14, 2023, defendant filed the two pending applications for

21  attorneys' fees and costs.  (Doc. Nos. 46, 47.)  After receiving two extensions of time in which to

22  do so, on April 25, 2023, plaintiff filed oppositions to the pending applications.  (Doc. Nos. 55,

23  56.)  Defendant filed its replies thereto on May 12, 2023.  (Doc. Nos. 58, 59.)

24                                    **LEGAL STANDARD**

25        "The most useful starting point for determining the amount of a reasonable [attorneys']

26  fee is the number of hours reasonably expended on the litigation multiplied by a reasonable

27  hourly rate," which is referred to as the "lodestar."  *Hensley v. Eckerhart*, 461 U.S. 424, 433

28  (1983); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is

1    calculated by multiplying the number of hours the prevailing party reasonably expended on the

2    litigation by a reasonable hourly rate.").  "The Supreme Court has stated that the lodestar is the

3    'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in

4    determining a reasonable attorney's fee."  *Van Skike v. Dir., Off. of Workers' Comp. Programs*,

5    557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562

6    (1992)).

7            "[T]o calculate attorneys' fees for defendants who prevail on an anti–SLAPP motion,"

8    courts utilize the lodestar method.  *Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*,

9    No. 21-cv-05566-EMC, 2023 WL 2989023, at *3 (N.D. Cal. Apr. 18, 2023).  Similarly, in

10   determining the amount of attorneys' fees to award pursuant to Rule 41(d), courts also utilize the

11   lodestar method.  *See Kelmar v. Bank of Am. Corp.*, No. 12-cv-6826-PSG-SHX, 2012 WL

12   12973473, at *2 (C.D. Cal. Oct. 26, 2012) (awarding attorneys' fees under Rule 41(d) by utilizing

13   the lodestar method); *see also Aloha Airlines, Inc. v. Mesa Air Grp., Inc.*, No. 07-cv-00007-DAE-

14   KSC, 2007 WL 2320672, at *4 (D. Haw. Aug. 10, 2007) (same).

15           District courts in the Ninth Circuit are required "to calculate an award of attorneys' fees

16   by first calculating the 'lodestar' before departing from it."  *Camacho v. Bridgeport Fin., Inc.*,

17   523 F.3d 973, 982 (9th Cir. 2008) (citation and internal quotation marks omitted).  The court

18   "should exclude from this initial fee calculation hours that were not 'reasonably expended'"

19   because they were "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.

20   "In addition to setting the number of hours, the court must also determine a reasonable hourly

21   rate, 'considering the experience, skill, and reputation of the attorney requesting fees.'"  *Welch v.*

22   *Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Chalmers v. City of Los Angeles*,

23   796 F.2d 1205, 1210 (9th Cir. 1986) ("In determining a reasonable hourly rate, the district court

24   should be guided by the rate prevailing in the community for similar work performed by attorneys

25   of comparable skill, experience, and reputation.")).  "Generally, when determining a reasonable

26   hourly rate, the relevant community is the forum in which the district court sits."  *Camacho*, 523

27   F.3d at 979.  However, when awarding attorneys' fees pursuant to Rule 41(d), the relevant

28   community is the forum of the previously dismissed action because that is the action in which

those fees were incurred.  *See ML Fashion, LLC v. Nobelle GW, LLC*, No. 3:21-cv-00499-JCH, 2022 WL 1796993, at *4 (D. Conn. June 2, 2022) (awarding attorneys' fees pursuant to Rule 41(d) after determining the reasonable hourly rate by considering the prevailing rates in the Northern District of Illinois, not Connecticut, because the forum of the previous litigation, and thus the relevant community, was the Northern District of Illinois).

"There is a strong presumption that the lodestar figure represents a reasonable fee." *Morales*, 96 F.3d at 364.  "[I]n rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho*, 523 F.3d at 982 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992)).  Those relevant factors include:  "preclusion of other employment by the attorney due to acceptance of the case; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases." *Camacho*, 523 F.3d at 982 n.1.

## DISCUSSION

The court will first address the reasonableness of the amount of attorneys' fees and costs requested in defendant's application for an award pursuant to Rule 41(d) and then turn to the reasonableness of the amount of attorneys' fees and costs requested in defendant's application for an award pursuant to California's anti-SLAPP statute.

### A.     Attorneys' Fees and Costs Incurred in the New York Action

In its application for an award of attorneys' fees and costs pursuant to Rule 41(d), defendant seeks a total award of $152,294.55, consisting of its lodestar of $144,922.00 in attorneys' fees and $7,372.55 in costs incurred in the New York Action.  (Doc. No. 46-1 at 5, 12, 17.)  Defendant contends that this amount is reasonable because its attorneys at Greenberg Traurig charged reasonable hourly rates and reasonably billed 278.4 hours in defending against plaintiff's "baseless claims" brought in the New York Action.  (*Id.* at 5, 9.)  In opposing defendant's Rule 41(d) application, plaintiff does not contest the reasonableness of the hourly

rates charged by defense counsel but does challenge the reasonableness of the number of hours defense counsel purportedly expended in defending the New York Action.  (Doc. No. 55.) Plaintiff also criticizes defendant for not providing detailed and descriptive billing records "that would allow the court to evaluate the work that was done and how much time each task took." (*Id.* at 6.)  In its reply brief, defendant maintains that such level of detail is not required.  (Doc. No. 59 at 7 n.1) (citing *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 1324 (2014) ("It is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method.")).  Nevertheless, defendant provided "detailed descriptions of each time entry (appropriately redacted to protect privilege and work product)" as an exhibit attached to the declaration of attorney Wong dated May 12, 2023, and defense counsel provided an unredacted version of that exhibit for the court's *in camera* review.  (Doc. No. 59-2.)

      1.    <u>Reasonableness of Defense Counsel's Hourly Rates in the New York Action</u>

In the New York Action, defendant was represented by the following attorneys from the international law firm, Greenberg Traurig:

- Kurt Kappes, a shareholder in the firm's Sacramento and San Francisco offices who has 37 years of complex litigation experience.  His hourly rate is $1,160, but he did not charge Jelly Belly for the work he performed in the New York Action in consideration of his long-standing client relationship with Jelly Belly.

- Eric Wong, a shareholder in the firm's New Jersey office who has 16 years of experience in commercial litigation.  His hourly rate was $700 in 2022.

- Thomas Zelante, an associate in the firm's New Jersey office who has experience in complex commercial litigation and graduated law school in 2018.  His hourly rate is $500.

- Paige Nestel, an associate in the firm's New Jersey office who has experience in complex commercial litigation and graduated from law school in 2013.  Her hourly rate is $575.

(Doc. No. 46-2 at 2–4.)  In his declaration, attorney Wong states that he believes all of these rates are reasonable and that based on his experience as a litigator, including 13 years at Greenberg

1   Traurig, "the rates charged are customary and usual for attorneys of similar experience at firms of

2   similar size and stature operating in the relevant markets." (*Id.* at 4–5.)  Attorney Wong refers to

3   a 2022 PricewaterhouseCoopers survey of billing rates for peer law firms in Sacramento, Boston,

4   and New Jersey ("the PwC survey") and asserts that the billing rates charged in the New York

5   Action are all below the median rate for attorneys of the same level in the New York market. (*Id.*

6   at 4.)  In addition to these four attorneys, defense counsel was also assisted by their staff:  Nicole

7   Travostino, a paralegal in the firm's New Jersey office whose hourly rate is $385; Jason Temple

8   and Melissa Davis, litigation support staff whose hourly rates are $250 and $285 respectively; and

9   research group members whose hourly rate is $220. (*Id.*)  Attorney Wong's declaration does not

10  address the reasonableness of the hourly rates charged by these firm staff members.

11          In its Rule 41(d) application, defendant argues that its counsel's hourly rates were "in line

12  with (and almost always far less than) the rates customarily charged for cases in [the Eastern

13  District of California], as well as the Southern District of New York and in the jurisdictions where

14  the involved attorneys are based . . . ." (Doc. No. 46-1 at 8.)  In support of this assertion,

15  defendant cites the declaration of attorney Wong, who stated that he believed that the rates were

16  customary.  However, according to that declaration, attorney Wong's belief in this regard was

17  based only on his own experience and a survey of rates charged by peer firms in 2022—attorney

18  Wong did not rely upon any case law nor has defendant cited to any decisions in which courts

19  have calculated attorneys' fees by applying those rates.  Moreover, defendant has cited to no

20  decisions in which courts have credited and relied on the PwC survey to determine the

21  reasonableness of hourly rates.  Although defendant cites four decisions in its application that

22  purport to "confirm" the "reasonableness of Greenberg Traurig's rates" (*id.*), all of those

23  decisions were issued judges of the Central District of California and dealt only with the

24  reasonable hourly rates for complex intellectual property attorneys in the Los Angeles and Orange

25  County market.  Citation to these cases is unhelpful both because the New York Action at issue

26  here was not a complex intellectual property case (it was a defamation case) and because the New

27  York Action was filed in New York state court and removed to the Southern District of New

28  York, and thus New York is the relevant community. (*Id.*)

At the June 20, 2023 hearing on the pending applications, the court asked defense counsel why defendant cited only to these Central District of California decisions, and attorney Wong explained that these citations were "merely examples." Yet attorney Wong was unable to articulate any reason why this court should look to these out-of-market and irrelevant "examples." Defense counsel was also unable to point to any decisions in which courts had addressed reasonable hourly rates in the New York market. Consequently, the undersigned has undertaken the task of researching such cases and has found several decisions that support a finding that the hourly rates charged by defense counsel in the New York Action are reasonable for the New York market. *See Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-cv-5766-JSR, 2018 WL 3104631, at *5–6 (S.D.N.Y. May 24, 2018) (finding reasonable the hourly rates of $1,165–$1,260 for partners and $569.02–$753.42 for associates in "the New York City 'big firm' market"); *Ballinasmalla Holdings Ltd. v. FCStone Merch. Servs., LLC*, No. 18-cv-12254-PKC, 2020 WL 814711, at *2, 4 (S.D.N.Y. Feb. 19, 2020) (concluding that the following hourly rates by attorneys in a large international law firm "of high reputation" were reasonable: $976–$1,017 for a partner with over 18 years of experience, $724–$783 for an associate with five years of experience). Having considered the hourly rates that other district courts have found to be reasonable for the New York market, as well as the declaration of attorney Wong and the attached biographies detailing the experience and qualifications of each of the three attorneys who billed time in the New York Action, (*see* Doc. No. 46-2 at 14–34), the court finds that the hourly rates charged by these attorneys for their work in connection with the New York Action are reasonable.

However, even in the expensive legal market of the Southern District of New York it has been observed that, "courts in this District typically award rates not to exceed $200 per hour for paralegals." *Vista Outdoor Inc.*, 2018 WL 3104631, at *7; *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-cv-0256-LAK, 2021 WL 2453972, at *3 (S.D.N.Y. June 15, 2021) (capping the paralegal hourly rate at $200 and noting that "courts in this district typically cap their hourly rates at $150 to $200 per hour"); *cf. Ballinasmalla Holdings*, 2020 WL 814711, at *2, 4 (finding that a rate of $290–$305 for a paralegal with 14 years of experience was reasonable). Notably, here, attorney Wong's declaration does not specify the level of experience

1   for each of the staff members, including paralegal Nicole Travostino, for whom defendant seeks

2   an hourly rate of $385.  Because defendant has not provided any support for that hourly rate or for

3   the hourly rates sought for the litigation support staff ($250 and $285) and research staff ($220),

4   the court does not find those requested rates to be reasonable under the circumstances.  Rather,

5   the court finds that $200 is reasonable hourly rate for a paralegal of unspecified experience in the

6   Southern District of New York, and $175 is a reasonable hourly rate for the litigation support and

7   research staff.  Accordingly, the court will utilize these reasonable rates in calculating defendant's

8   lodestar below.

9              2.       Reasonableness of the Hours Billed by Defense Counsel in the New York Action

10             In the Rule 41(d) context, "[c]osts should be reduced or not awarded if the work

11  performed in the first case 'will still be useful to defendants in the instant litigation.'"  *Cheng v.

12  PayPal, Inc.*, No. 21-cv-03608-BLF, 2022 WL 126305, at *5 (N.D. Cal. Jan. 13, 2022) (quoting

13  *Esquivel v. Arau*, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996)); *Koch v. Hankins*, 8 F.3d 650, 652

14  (9th Cir. 1993) (holding that "a defendant is entitled only to recover . . . for work which is not

15  useful in continuing litigation between the parties")).  Defendant has "the burden of proving the

16  reasonable number of hours [it] devoted to the litigation, whether through declarations or redacted

17  or unredacted timesheets or billing records."  *Concepcion*, 223 Cal. App. 4th at 1325.

18             Defendant contends that its counsel reasonably billed 278.4 hours in the New York

19  Action, which included approximately:  73 hours spent to remove the New York Action from

20  state to federal court, 92 hours spent on the motion to dismiss and the pre-motion letter that was

21  required under local practice in the Southern District of New York, 33 hours spent on responses

22  to plaintiff counsel's various unnecessary and baseless procedural applications, and 77 hours

23  spent on factual investigation.  (Doc. Nos. 46-1 at 9–11; 59 at 7–8.)  Defendant argues that these

24  billed hours are reasonable particularly given that plaintiff's counsel's litigation tactics and

25  conduct "required Jelly Belly to incur far more fees than otherwise would have been necessary."

26  (Doc. No. 46-1 at 9–10.)  For example, because plaintiff did not allege a specific dollar amount of

27  damages in his complaint, removing the New York Action "required significant legal research

28  and factual development to assess and establish that the New York Action satisfied the amount in

10

controversy requirement of diversity jurisdiction." (*Id.*)  In another example, defendant explains that plaintiff's tactics unnecessarily increased the time defense counsel was required to spend on preparing the motion to dismiss.  (*Id.* at 10.)  Specifically, the presiding judge required parties to file pre-motion letters and responses, in which the moving party would identify deficiencies, and the opposing party would indicate whether it intends to correct the purported deficiencies "in lieu of motion practice, such as by filing, or seeking leave to file, an amended complaint." (*Id.*)  Defendant complied with the presiding judge's requirement by filing a pre-motion letter identifying the deficiencies in plaintiff's complaint (namely, that plaintiff's claims were barred by the applicable statute of limitations).  (*Id.*)  But plaintiff did not comply; "[r]ather than advising Jelly Belly that he would voluntarily dismiss his New York complaint, plaintiff failed to respond to the pre-motion letter at all," leading the court to set a briefing schedule for the motion to dismiss.  (*Id.*)  After defendant filed its motion to dismiss,[3] plaintiff filed a pre-motion letter of his own seeking leave to voluntarily dismiss the action, which defendant responded to as was required, even though the pre-motion letter was unnecessary.  (*Id.* at 10–11.)  Indeed, as that court pointed out to plaintiff, such a dismissal would not require court approval because defendant had not yet answered the complaint.  (*Id.*)  Thus, defendant contends that plaintiff's decision to file that pre-motion letter caused defendant to incur unnecessary expense in responding to that letter. (*Id.*)  Next, plaintiff filed yet another baseless and unnecessary pre-motion letter seeking leave to file a motion to strike defendant's response to his first pre-motion letter on the ground that the single-spaced response violated the court's formatting requirements.  (*Id.* at 11.)  The court swiftly rejected plaintiff's argument and denied plaintiff's second pre-motion letter in a single sentence.  (*Id.*)  Finally, apparently due to the confusion caused by plaintiff's filings, the court ordered *defendant* to submit an additional response letter to specifically address the differences between dismissals under Rule 41(a)(1) and 41(a)(2).  (Doc. Nos. 59 at 8; 59-8 at 2–3.)

---

[3]  It is worth noting that, even though plaintiff Klein ultimately dismissed the New York Action because his claims were time barred, defendant's motion to dismiss plaintiff's New York complaint was not limited to arguments with regard to the applicable statute of limitations.  (Doc. Nos. 59 at 8; 59-5 at 56–82.)  Rather, defendant's motion also advanced several arguments addressing the insufficiency of plaintiff's allegations to state cognizable libel and civil conspiracy claims on the merits.  (*Id.*)

1    In his opposition to the pending motion, plaintiff does not counter these specific examples

2    and instead states in conclusory fashion that he "did not file frivolous litigation or engage in

3    pointless motion practice." (Doc. No. 55 at 6.)  The court disagrees.  Having reviewed the docket

4    in the New York Action, it is clear that a substantial amount of the attorneys' fees defendant

5    incurred were the result of plaintiff's failure to meaningfully engage in the pre-motion letter

6    process devised by that court to avoid unnecessary filings and motion practice.

7    Plaintiff also argues that, because defendant's arguments in moving to dismiss his claims

8    in this action were "virtually identical" to the arguments defendant made in its motion to dismiss

9    the New York Action, the work product associated with that motion was not rendered useless.

10   (Doc. No. 55 at 5, 7.)  This argument is well taken to some extent.  Even though the New York

11   Action involved application of New York law (specifically, the statute of limitations in New

12   York), and this action involved Massachusetts law initially and then California law, that

13   difference does not necessarily render all of the attorney work performed in the New York Action

14   useless in this action.  For instance, defense counsel's factual investigation and assessment of

15   plaintiff's factual allegations was arguably useful in assessing plaintiff allegations in this action,

16   which were largely the same and based on the same alleged instances of defamation and

17   conspiracy.  In its reply, defendant argues that because the court has already determined that

18   defendant will also be awarded the fees it incurred in moving to strike/dismiss this action

19   pursuant to California's anti-SLAPP statute, the time spent on work product that was useful to

20   some degree in this action should not be excluded from the Rule 41(d) lodestar analysis.  (Doc.

21   No. 59 at 6, 13.)  The court has carefully reviewed defense counsel's detailed billing records,

22   comparing the billing entries in both actions, and has not identified any entries reflecting

23   duplication or overlap among the two actions.  To the extent work product from the New York

24   Action was useful in the present action, there is no indication in defense counsel's billing records

25   that defendant was billed twice for that work.  Thus, if the court were to exclude from the Rule

26   41(d) lodestar counsel's entries for work product that was arguably useful in this action, neither

27   award ordered by the court herein—under Rule 41(d) or anti-SLAPP—would compensate

28   defendant for the fees incurred as to those entries.  That result is not tenable.  As explained below,

defendant is entitled to a mandatory award of attorneys' fees associated with its successful anti-SLAPP motion, including the fees incurred for the time spent by counsel to assess and investigate plaintiff's allegations.  Therefore, the court will not reduce the number of hours in the New York Action to omit billing entries for time spent on work product that was arguably useful in this action.  In addition, the court has reviewed defense counsel's detailed time entries, which recorded the time spent on discrete tasks in six-minute increments, and the court finds that defense counsel has not inflated its hours or spent an unreasonable amount of time on the tasks performed in the New York Action.

Accordingly, the court will calculate defendant's lodestar in the New York Action using the reasonable amount of time spent by defense counsel and their staff.[4]

3.    Lodestar Calculation in the New York Action

Applying the reasonable hourly rates to the number of hours reasonably billed in the New York Action as reflected in defense counsel's detailed billing records, the court calculates the lodestar to be $141,285.00, as shown in the following table:

| Attorney/Staff | Reasonable Rate in New York | Hours Reasonably Billed | Amount Billed |
|---|---|---|---|
| Eric Wong | $700 | 143.7 | $100,590.00 |
| Paige Nestel | $575 | 5.7 | $3,277.50 |
| Thomas Zelante | $500 | 64.4 | $32,200.00 |
| Nicole Travostino | $200 | 9.2 | $1,840.00 |
| Jason Temple | $175 | 5 | $875.00 |
| Melissa Davis | $175 | 14.1 | $2,467.50 |
| "LAC Group" | $175 | 0.2 | $35.00 |
| **Total:** | | **242.3 hours** | **$141,285.00** |

---

[4]  The court pauses to note that, although the number of hours spent by defense counsel and their staff totaled 278.4, defense counsel did not charge Jelly Belly for all of these hours.  (*See* Doc. No. 59-2 at 8.)  For example, the 278.4 total includes the 19 hours spent by shareholder Kurt Kappes, even though he did not charge Jelly Belly for his time.  Indeed, the billing records reflect $0.00 as the "billed amount" for each of his entries.  Thus, the lodestar does not include any fees for shareholder Kappes's time or for the other entries that were notated as "no charge."

1      Accordingly, the court will award defendant $141,285.00 in attorneys' fees incurred in the

2   New York Action.

3          4.      Costs Incurred in the New York Action

4      Next, the court assesses defendant's requested amount for an award of costs incurred in

5   the New York Action.  In its application under Rule 41(d), defendant seeks to recover $7,372.55

6   in costs, which includes significant costs for computerized research and electronic document

7   hosting and user fees.  (Doc. No. 46-1 at 12.)  Although defendant cites a single case to support

8   its costs request, that case does not address whether a party may recover for electronic document

9   hosting and user fees, which amounts to $3,883.10 in the New York Action.  (*See* Doc. Nos. 46-1

10  at 12; 46-2 at 36.)  At the June 20, 2023 hearing, defense counsel was not able to point to any

11  authority supporting the award of such e-discovery hosting costs.  In addition, because the New

12  York Action did not proceed past the pleadings stage and formal discovery had not begun, the

13  court does not find defense counsel's expenditure on e-discovery hosting to be reasonable under

14  these circumstances.  Furthermore, in reviewing defense counsel's documentation of its costs in

15  the New York Action, the court has identified an entry on June 27, 2022 for $96.60 in costs for

16  Westlaw research that the court will exclude because that research was performed by a

17  timekeeper who is not mentioned as an attorney or staff member who worked on this matter.  (*See*

18  Doc. No. 46-2 at 36.)  Finally, the court will also exclude the $75.63 in costs associated with a

19  *pro hac vice* application because the docket in the New York Action does not reflect the filing of

20  any such application.  (*See id.*)  Accordingly, the court will award defendant $3,317.22 in costs

21  incurred in the New York Action.

22     In sum, the court will grant defendant's application for an award of attorneys' fees and

23  costs incurred in the New York Action pursuant to Rule 41(d), in part, and award a total of

24  $144,602.22.

25  **B.     Attorneys' Fees and Costs Incurred in this Action**

26     In its application for an award of attorneys' fees and costs pursuant to California Civil

27  Procedure Code § 425.16(c), defendant seeks a total award of $203,923.87, consisting of

28  /////

14

1   $188,657.50[5] in attorneys' fees and $15,266.37 in costs incurred in this action.  (Doc. No. 47-1).

2   Defendant contends that this amount is reasonable because its attorneys at Greenberg Traurig

3   charged reasonable hourly rates and reasonably billed 287.35 hours in defending against

4   plaintiff's "baseless claims."  (*Id.* at 6, 12.)  Defendant further contends that it "reasonably

5   devoted significant resources" because plaintiff's claims challenged Jelly Belly's central

6   trademark and history, plaintiff sought at least $10 million in damages, and plaintiff's decision to

7   file this action in an improper forum (Massachusetts) increased defendant's expenses.  (*Id.* at 6,

8   12.)

9         In opposing defendant's application for attorneys' fees and costs incurred in this action,

10   plaintiff primarily asserts that the court should consider his financial circumstances and decide

11   not to award any fees because doing so would subject him to financial ruin.  (Doc. No. 56 at 4.)[6]

12   According to plaintiff, he is "a senior citizen, well past his retirement age, [and] primarily reliant

13   on social security payment to get by in his life."  (*Id.*)  Defendant emphasizes in its reply, plaintiff

14   has not provided any evidence to support this vague assertion regarding his financial condition.

15   Defendant also notes that, contrary to his assertions here, plaintiff has recently portrayed himself

16   _____

17   [5]  As explained in attorney Wong's declaration, this amount includes "the sum of the fees and
     costs already incurred ($181,187.50), plus the anticipated fees for [defense counsel's] work on the

18   reply and hearing ($7,470)," for which attorney Wong expects to spend approximately 10 hours
     and attorney Lane is expected to spend approximately 2 hours.  (Doc. No. 47-2 at 6.)  However, at

19   the June 20, 2023 hearing, attorney Wong was unable to provide the number of hours they
     actually spent on the reply briefs and hearing preparation, though attorney Wong indicated it was

20   "far more" than estimated.  In light of defense counsel's inability to adequately address the
     court's questions at the hearing, coupled with the fact that the reply briefs did not cite any

21   decisions to support the reasonableness of defense counsel's requested hourly rates in the relevant
     legal market, nor any authority to support the hourly rates of their paralegals and support staff, the

22   court is not persuaded that any hours in excess of the estimated 10 hours for attorney Wong and 2
     hours for attorney Lane are reasonable.  Accordingly, the court will include 10 hours for attorney

23   Wong and 2 hours for attorney Lane for these tasks in the lodestar calculated below.

24

25   [6]  In his opposition, plaintiff does not contest the reasonableness of the hourly rates charged by
     defense counsel, but he again criticizes defendant for not providing detailed billing records.

26   (Doc. No. 56.)  In response, defendant again maintains that such detail is not required, but it
     nevertheless provided "detailed descriptions of each time entry (appropriately redacted to protect

27   privilege and work product)" as an exhibit to the Wong declaration dated May 12, 2023.  (Doc.
     No. 58-2.)  Defense counsel also provided an unredacted version of that exhibit for the court's *in*

28   *camera* review.

online as the owner and president of his successful Candyman Kitchens business, which sells millions of expensive candy products. (Doc. No. 58 at 8 n.1.) Defendant further argues in its reply that plaintiff's purported financial condition is not an appropriate consideration because the award of fees under the anti-SLAPP statute is mandatory. (Doc. No. 58 at 6–8.) In this latter regard, defendant is correct. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.").

Although the court is sympathetic to plaintiff's financial concerns and fully appreciates the potential impact of this order upon him, the court does not have discretion to consider a plaintiff's ability to pay when awarding fees under California's anti-SLAPP statute. *DuBois v. Boskovich*, No. 21-cv-03224-HSG, 2023 WL 3637030, at *1 (N.D. Cal. May 24, 2023) ("Plaintiff does not cite—and the Court is unaware of—any authority giving the Court discretion to consider her ability to pay in awarding fees under the anti-SLAPP statute."); *see also Gregory v. Harris*, No. 21-cv-03311-VKD, 2022 WL 1136798, at *6 (N.D. Cal. Apr. 18, 2022) ("The Court [] is sympathetic to [the *pro se* plaintiff's] statement that she cannot afford to pay a fee award in the amount of $17,505. However, the Court does not have discretion to adjust the amount of the mandatory fee award to accommodate [her] ability to pay."). Accordingly, here the court must focus on the reasonableness of defense counsel's hourly rates and time entries rather than on plaintiff's financial condition.

    1.   <u>Reasonableness of Defense Counsel's Hourly Rates in this Action</u>

In this action, which was initially filed in Massachusetts and was transferred to this district, defendant was represented by the following attorneys from Greenberg Traurig, some of whom had also worked on the New York Action:

- Shareholder Kurt Kappes, though he did not charge Jelly Belly for the work he performed in this action either.

- Shareholder Eric Wong, who charged the same hourly rate for 2022 as in the New York Action ($700), and he charged $725 per hour in 2023.

/////

- • Associate Thomas Zelante, who charged the same hourly rate ($500) as in the New York Action.

- • David Thomas, a shareholder in the firm's Boston office who has 25 years of experience in complex commercial litigation.  His hourly rate was $700.

- • Angela Bunnell, an associate in the firm's Boston office who has 9 years of experience in complex commercial litigation.  Her hourly rate was $700 in 2022 and $795 in 2023.

- • Michael Lane, an "of counsel" in the firm's Sacramento office who has 18 years of experience in complex commercial litigation, including in this district.  His hourly rate was $670 in 2022 and $835 in 2023.

(Doc. No. 47-2 at 3–4.)

In his declaration, attorney Wong states that he believes all of these rates are reasonable and that based on his experience as a litigator, "the rates charged are customary and usual for attorneys of similar experience at other firms of similar size and stature operating here . . ." (*Id.* at 5.)  Attorney Wong again refers to the PwC survey and asserts that the billing rates charged in this action are all below the median rate for attorneys of the same level in the New Jersey, Boston, and Sacramento legal markets.  (*Id.*)  Though, again defendant does not cite to any decision in which a court has relied upon a similar PwC survey in determining reasonable hourly rates in a particular market.  In addition, attorney Wong's declaration again does not address the reasonableness of the hourly rates charged by the staff members who assisted defense counsel on this matter:  Matthew McGuire, a paralegal in the firm's Boston office whose hourly rate is $385; Kimberly Lambdin, a paralegal in the firm's Sacramento office whose hourly rate is $395; and research group members whose hourly rate is $220.  (*Id.* at 4.)

In its application for attorneys' fees and costs pursuant to California's anti-SLAPP statute, defendant argues that its counsel's hourly rates were "in line with the rates customarily charged for cases in this district (and in the other jurisdictions where the involved attorneys are based) for work by attorneys of comparable skill, experience, and reputation."  (Doc. No. 47-1 at 11.)  However, defendant cites only to the same Central District of California decisions that it cited in

17

1   its Rule 41(d) application, all of which dealt with the rates charged in Los Angeles and Orange

2   County, not the Eastern District of California (or Boston, Massachusetts).  At the June 20, 2023

3   hearing, attorney Wong again explained that these decisions were cited merely as examples, and

4   again was unable to point to any decisions in which courts addressed the reasonableness of hourly

5   rates in the relevant market.  Consequently, the undersigned again was required to undertake the

6   task of researching and determining reasonable hourly rates in this district.

7         "Case law determining reasonable hourly rates in anti-SLAPP cases within the court's

8   Sacramento division is sparse, but the court may nonetheless assign a fee based on its own

9   knowledge and familiarity with the legal market, factoring in the attorney's experience and skill;

10   the difficulty or complexity of the litigation to which that skill was applied; and the rates

11   determined reasonable in other cases." *AT&T Mobility LLC v. Yeager*, No. 2:13-cv-00007-KJM-

12   DB, 2018 WL 1567819, at *3 (E.D. Cal. Mar. 30, 2018); *cf. Reade v. New York Times Co*., No.

13   2:22-cv-00543-WBS-KJN, 2023 WL 2602296, at *2 (E.D. Cal. Mar. 22, 2023) (awarding fees

14   pursuant to anti-SLAPP statute but noting that the rate of $600–$670 for an attorney with twenty

15   years of experience was higher than the rates typically awarded in this district, albeit in cases that

16   involved different types of claims, such as civil rights and disability discrimination claims).  The

17   undersigned has previously found the following ranges of hourly rates to be reasonable:  $650–

18   $750 for senior partners with over thirty years of experience; $545–$695 for partners and senior

19   counsel; $475–$575 for senior associates; $330–$400 for junior associates; $200 for paralegals.

20   *See Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at

21   *11 (E.D. Cal. Apr. 12, 2023) (citing cases); *see also Arredondo v. Sw. & Pac. Specialty Fin.,*

22   *Inc.*, No. 1:18-cv-01737-DAD-SKO, 2022 WL 2052681, at *14 (E.D. Cal. June 7, 2022)

23   (reducing a partner's hourly rate for the purposes of a lodestar cross-check from $850 to $750

24   because that was the highest hourly rate previously accepted by this court).

25         Accordingly, the court finds that some of the hourly rates charged by defense counsel in

26   this action are not reasonable in the Eastern District of California legal market.  For example,

27   attorney Lane is "of counsel" in Greenberg Traurig's Sacramento office with 18 years of

28   experience, and his hourly rate of $670 in 2022 is on the high end of reasonable, whereas the

increase of his hourly rate to $835 in 2023 is well above the reasonable rate in this district.  In addition, defendant has not cited any support for its assertion that the hourly rates charged by attorneys Thomas and Bunnell in the firm's Boston office ($700 in 2022 and $790 in 2023) are reasonable in the Boston legal market.  Notably, shareholder Wong has seven more years of experience than associate Bunnell, yet they both charged $700 per hour in 2022, and shareholder Wong's rate increased to only $725 in 2023, whereas associate Bunnell's rate increased to $795. (*See* Doc. No. 47-2 at ¶ 12.)  Finally, an hourly rate of $500 is not reasonable in the Sacramento legal market for attorney Zelante, an associate with only approximately four years of experience. As for the hourly rates for paralegals and staff with unspecified years of experience, defendant has not cited to any decisions in which courts have found rates comparable to those requested here to be reasonable, or otherwise offered justification for the requested rates.

For these reasons, the court finds the following hourly rates to be reasonable for the attorneys and staff who billed time on this action:

| Attorney/Staff | Level & Experience | Requested Rate | Reasonable Rate in this District |
|---|---|---|---|
| David Thomas | Shareholder (25 years) | $700 | $700 |
| Michael Lane | Of Counsel (18 years) | $670 (2022) $835 (2023) | $670 |
| Eric Wong | Shareholder (16 years) | $700 (2022) $725 (2023) | $670 |
| Angela Bunnell | Associate (9 years) | $700 (2022) $795 (2023) | $575 |
| Thomas Zelante | Associate (4 years) | $500 | $400 |
| Matthew McGuire and Kimberly Lambdin | Paralegals | $385 $395 | $200 |
| "LAC Group" | Research staff | $220 | $150 |

The court will utilize these reasonable rates in calculating defendant's lodestar below.

/////

/////

2. <u>Reasonableness of the Hours Billed by Defense Counsel in this Action</u>

In calculating the reasonable number of hours spent by defense counsel in the anti-SLAPP context, courts include time spent in connection with the anti-SLAPP motion, "time spent on th[e] motion for fees and costs," and time spent preparing "other motions associated with the motion to strike." *Shahid Buttar for Cong. Comm.*, 2023 WL 2989023, at *3 (citing *Ketchum*, 24 Cal. 4th at 1141); *DuBois v. Boskovich*, No. 21-cv-03224-HSG, 2023 WL 3637030, at *1 (N.D. Cal. May 24, 2023). "Courts have awarded time spent on motions to dismiss, discovery, notices of removal, and answers to complaints, as long as that work was connected to the anti-SLAPP motion." *Mullan v. Daniels*, No. 19-cv-04058-KAW, 2021 WL 4932726, at *2 (N.D. Cal. Apr. 7, 2021) (citing cases). The anti-SLAPP statute's fee shifting provision "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit." *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 446 (2002).

Here, in the pending application for attorneys' fees pursuant the anti-SLAPP statute, defendant asserts that its counsel reasonably and efficiently performed the following work to defend against plaintiff's baseless claims in this action:

> (a) successfully removing the action from Massachusetts state court to the District of Massachusetts; (b) successfully moving to transfer the action from Massachusetts federal court to this Court; (c) once transferred, successfully moving to strike Plaintiff's Complaint; (d) successfully moving for an award of fees Jelly Belly incurred in the prior New York action pursuant to Rule 41(d); and (e) once the Court awarded Jelly Belly its fees, preparing fee applications pursuant to the Court's March 7, 2023 order.

(Doc. No. 58 at 10.) As a preliminary matter, the court notes that each of these categories of time spent by defense counsel are recoverable under the anti-SLAPP statute. The remaining question for the court to address is whether the hours billed by defense counsel were reasonable. Defendant's application does not provide subtotals for how many hours were spent on each of those categories, but defendant maintains that "[e]ach of these efforts was necessary to defend Jelly Belly's interests and obtain the ultimate favorable result of a complete victory and the dismissal" of plaintiff's claims. (Doc. No. 47-1 at 12.)

1    The court has carefully reviewed defense counsel's billing records in this action and has

2  identified a few issues that warrant exclusions and reductions in the number hours used to

3  calculate defendant's lodestar.  First, attorney Lane billed time on December 5, 6, 13, 14, 15, 16,

4  and 27, 2022, totaling 21.2 hours, but those entries' descriptions (e.g., draft opposition to motion

5  to dismiss) suggest that these entries were erroneously listed in this action and were actually

6  documenting time spent in the related declaratory relief action brought by Jelly Belly against

7  Klein:  *Jelly Belly Candy Co. v. Klein*, 2:22-cv-01509-DAD-JDP.  (Doc. No. 58-2 at 5–6.)

8  Accordingly, the court will reduce the number of hours billed by attorney Lane to deduct these

9  21.2 hours that should not have been included.  Second, attorney Bunnell billed time on October

10  12, 17, and 25, 2022 and November 1, and 16, 2022, totaling 12 hours, to perform tasks that are

11  more appropriately performed by a paralegal, not a ninth-year associate (e.g., cite-checking).

12  (Doc. No. 58-2 at 3–4.)  Accordingly, the court will reduce the number of hours billed by attorney

13  Bunnell from 29.7 to 17.7.  Third, the billing records reflect that fourth-year associate Zelante's

14  last billing entry for this action was on October 28, 2022, and since that date, there were no

15  entries by any junior or mid-level associate on this matter.  Indeed, since this action was

16  transferred to this district in early January 2023, there have been no associates staffed on this case

17  at all.  As a result, shareholders Wong and Lane performed all of the attorney work on the anti-

18  SLAPP motion and the two applications for an award of fees and costs.  Specifically, since the

19  transfer, shareholder Lane billed 58 hours and shareholder Wong billed 38.8 hours.  While that

20  number of hours does not appear to be excessive or redundant, the court is nevertheless concerned

21  that including all of these hours in the lodestar is not reasonable in light of defense counsel's

22  staffing decisions and failure to utilize associate attorneys with lower billing rates.  Accordingly,

23  the court will reduce the number of post-transfer hours spent by both shareholders by one-quarter,

24  which is sufficient in the court's view to account for the time that could have been more

25  reasonably spent by associates at a lower billing rate.  That is, the court will reduce shareholder

26  Lane's hours from 58 to 43.5 and reduce shareholder Wong's post-transfer hours from 38.8 to

27  29.1 hours.  The court does not, however, find any reason to reduce shareholder Wong's pre-

28  transfer 49.1 hours.  In addition, the court will include 10 hours for shareholder Wong and 2

hours shareholder Lane as reasonably billed time for the hours spent on the reply briefs and preparation for the hearing on the pending applications. Thus, the court will calculate shareholder Wong's lodestar in this action based on a total of 88.2 hours and shareholder Lane's lodestar in this action based on a total of 45.5 hours.

　　　　3.　　Lodestar Calculation for this Action

　　　　Applying the reasonable hourly rates to the number of hours reasonably billed in this action, the court calculates the lodestar to be $128,159.00, as shown in the following table:

| Attorney/Staff | Reasonable Rate in this District | Hours Reasonably Billed | Amount Billed |
|---|---|---|---|
| David Thomas | $700 | 1.6 | $1,120.00 |
| Michael Lane | $670 | 45.5 | $30,485.00 |
| Eric Wong | $670 | 88.2 | $59,094.00 |
| Angela Bunnell | $575 | 17.7 | $10,177.50 |
| Thomas Zelante | $400 | 58.4 | $23,360.00 |
| Matthew McGuire | $200 | 5.1 | $1,020.00 |
| Kimberly Lambdin | $200 | 13.2 | $2,640.00 |
| "LAC Group" | $150 | 1.75 | $262.50 |
| **Total:** | | **230.85 hours** | **$128,159.00** |

　　　　Accordingly, the court will award defendant $128,159.00 in attorneys' fees incurred in this action.

　　　　4.　　Costs Incurred in this Action

　　　　Next, the court turns to the costs that defendant incurred in this action. Defendant seeks to recover $15,266.37 in costs, which includes $11,618.64 in costs for computerized research and electronic document hosting and user fees. (Doc. Nos. 47-1 at 15; 47-2.) However, for the same reasons explained above with regard to the costs incurred in the New York Action, the court does not find these e-discovery hosting fees to be reasonable in this case. The other costs listed by defense counsel, e.g., research costs and court filing fees, are recoverable and reasonably incurred

in this action.  Accordingly, the court will award defendant $3,647.73 in costs incurred in this action.

In sum, the court will grant defendant's application for an award of attorneys' fees and costs incurred in this action, in part, and award a total of $131,806.73.

### CONCLUSION

For the reasons explained above,

1. Defendant's application for an award of attorneys' fees and costs pursuant to Rule 41(d) (Doc. No. 46) is granted, in part;

   a. The court awards defendant $144,602.22 in attorneys' fees and costs incurred in the New York Action;

2. Defendant's application for an award of attorneys' fees and costs pursuant to California's anti-SLAPP statute (Doc. No. 47) is granted, in part;

   a. The court awards defendant $131,806.73 in attorneys' fees and costs incurred in this action;

3. Plaintiff is directed to pay defendant, through defendant's counsel, the amounts awarded above;

4. Although the Clerk of the Court will serve a copy of this order on plaintiff by mail at his address of record, the court also directs defendant to serve a copy of this order on plaintiff by email at his email address (candymankitchens@gmail.com) and file a proof of service within seven (7) days of the date of entry of this order; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 22, 2023**

UNITED STATES DISTRICT JUDGE